**JUDGE SWAIN**

PITTA & DREIER LLP
499 Park Avenue
New York, New York 10022
(212) 652-3890
BRUCE COOPER (BC 2764)
JANE LAUER BARKER (JB 5436)
*Attorneys for Defendant Local 272 Welfare Fund*



UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK



HORIZON HEALTHCARE SERVICES, INC.,
HORIZON HEALTHCARE OF NEW YORK, INC. and
RAYANT INSURANCE COMPANY OF NEW YORK
f/k/a HORIZON HEALTHCARE INSURANCE
COMPANY OF NEW YORK,

        Plaintiffs,

        - against -

LOCAL 272 LABOR MANAGEMENT WELFARE
FUND,

        Defendant.

**NOTICE OF REMOVAL**

Civil Action No.

Defendant, LOCAL 272 WELFARE FUND (the "Fund"), sued herein as LOCAL

272 LABOR MANAGEMENT WELFARE FUND, by its attorneys, Pitta & Dreier LLP,

respectfully alleges as follows:

**PRELIMINARY STATEMENT**

1.      The Fund submits this notice of removal pursuant to 28 U.S.C. §§ 1331,

1441 (b) and 1446 to remove the above-referenced civil action to this Court from the

Supreme Court of the State of New York, County of New York, on the ground that the

action is founded on a claimed right as to which federal law completely preempts state

law.

{00353109.DOC;}

## STATEMENT OF GROUNDS FOR REMOVAL

2.     This Court has original jurisdiction of this action pursuant to sections 502(a), (e) and (f) of the Employee Retirement Income Security Act of 1974, as amended ("ERISA"), 29 U.S.C. Section 1132(a), (e) and (f).

3.     Pursuant to 28 U.S.C. § 1446(b), this notice of removal is timely as it is filed within 30 days after the receipt by the Fund of a copy of the Summons and Complaint on or about April 23, 2008.  A copy of the Summons and Complaint is annexed hereto as Exhibit "A".

4.     Venue is proper in this district court pursuant to 28 U.S.C. § 1446(a) as this action is pending in the County of New York which is within the Southern District of New York.

5.     The Fund is administered by a Board of Trustees composed of an equal number of employer and employee representatives as required by Section 302(c)(5) of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 186(c)(5).

6.     As is alleged in the Complaint, the Fund is an "employee welfare benefit plan" ("the Plan") within the meaning of Section 3(1) of ERISA, 29 U.S.C. Section 1002(1).  The Fund provides, inter alia, medical benefits to workers of employers who have agreed, pursuant to collective bargaining agreements with Teamsters Local 272, to contribute to the Fund.  (Complaint, ¶ ¶ 2-3).

7.     The Fund, pursuant to Plan documents, receives claims for medical benefits from, and on behalf of, participants or beneficiaries of the Fund and renders determinations regarding benefits due under the terms of the Fund's Plan and pays benefits to the participants or beneficiaries or to health care providers, as the case may be.

8.    Plaintiffs, as alleged in the Complaint, had an agreement with Presbyterian Hospitals and Continuum (the "hospitals") to provide to the hospitals numbers of patients, including individuals enrolled in ERISA plans, such as the Fund's Plan. (Complaint, ¶¶ 11-12).

9.    As alleged in the Complaint, participants and beneficiaries of the Fund received health care services in the hospitals and the Fund received claims for benefits on behalf of those participants and beneficiaries and made determinations regarding the appropriate amount of benefits to be paid to the hospitals under the terms of its Plan. (Complaint, ¶¶ 17, 20).

10.    Plaintiffs allege that the Fund has failed to pay the proper amounts for services rendered by the Presbyterian Hospitals and Continuum.  (Complaint, ¶¶ 2, 32, 39).

11.    Plaintiffs allege that the Fund's failure to pay the proper amounts for services rendered by the hospitals to the participants and beneficiaries of the Fund constitutes a breach of contract, unjustly enriches the Fund, and constitutes a prima facie tort. (Complaint, ¶¶ 42-60).  Plaintiffs seek as relief, *inter alia,* that the Fund be ordered to pay the hospitals the alleged proper amounts for the services rendered by the hospitals to the participants and beneficiaries of the Fund.

12.    ERISA completely preempts state common law or statutory laws that "relate to" ERISA plans.  Where a federal statute completely preempts state law causes of action, such causes of action are necessarily federal in character and can be removed. *Aetna Health Inc. v. Davila,* 542 U.S. 200 (2004).

12.     Section 514(a) of ERISA, 29 U.S.C. § 1144(a), completely preempts state common law and statutory claims for benefits due under the terms of employee welfare benefit plans or that provide alternative remedies to ERISA's enforcement mechanisms. *Aetna Health Inc. v. Davila,* 542 U.S. 200 (2004); *Pilot Life Insurance Company v. Dedeaux,* 481 U.S. 41 (1987).

13.     Section 514(a) of ERISA, 29 U.S.C. §1144(a), completely preempts state common law and statutory claims that are predicated on the existence of an ERISA plan. *Ingersoll-Rand Co. v. McClendon,* 498 U.S. 133 (1990).

14.     Section 514(a) of ERISA, 29 U.S.C. § 1144(a), completely preempts state common law and statutory claims that dictate the manner in which ERISA plans are administered or mandate whether and how benefits are to be paid by an ERISA plan. *FMC Corp. v. Holliday,* 498 U.S. 52 (1990); *Boggs v. Boggs,* 520 U.S. 833 (1997).

12.     Based upon the foregoing, the Complaint arises under federal law within the meaning of 28 U.S.C. § 1331 and 1441(b).  *Metropolitan Life Ins. Co. v. Taylor*, 481 U.S. 58 (1987).

WHEREFORE, removal of plaintiffs' complaint to this Court is proper pursuant to 28 U.S.C. § 1331 and 1441(b).

Dated: May 12, 2008
    New York, New York

                             Respectfully submitted,
                             PITTA & DREIER LLP
                             *Attorneys for Defendant Local 272*
                             *Welfare Fund*

                             By:
                                 Jane Lauer Barker (JB 5436)
                             499 Park Avenue
                             New York, New York  10022
                             (212) 652-3890

Exhibit A

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

---

HORIZON HEALTHCARE SERVICES, INC.,
HORIZON HEALTHCARE OF NEW YORK,
INC., and RAYANT INSURANCE
COMPANY OF NEW YORK f/k/a HORIZON
HEALTHCARE INSURANCE COMPANY OF
NEW YORK,

                    Plaintiffs,

             v.

LOCAL 272 LABOR MANAGEMENT
WELFARE FUND,

                    Defendant.

---

Index No. _____

**SUMMONS**

TO:   Local 272 Labor Management Welfare Fund
      220 East 23rd St.
      New York, New York 10010

You are hereby summoned and required to serve upon Plaintiff an answer to the Complaint in this action within twenty (20) days after service of this summons, exclusive of the day of service, or within thirty (30) days after service is complete if this summons is not personally delivered to you within the State of New York. In case of your failure to answer, judgment will be taken against you for the relief demanded in the Complaint.

The basis of the venue designated is that Defendant has its principal places of business in New York County.

Dated: New York, New York
       April 22, 2008

NEW YORK
COUNTY CLERKS OFFICE

APR 23 2008

NOT COMPARED
WITH COPY FILE

GREENBERG TRAURIG, LLP
200 Park Avenue
New York, New York 10166
(212) 801-9200

By _____
David Jay

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

---

HORIZON HEALTHCARE SERVICES, INC., :
HORIZON HEALTHCARE OF NEW YORK, :
INC., and RAYANT INSURANCE :
COMPANY OF NEW YORK f/k/a HORIZON :     Index No.
HEALTHCARE INSURANCE COMPANY OF :
NEW YORK, :
                                  :
             Plaintiffs,    :                 **COMPLAINT**
                                    :
            v.                    :
                                      :
LOCAL 272 LABOR MANAGEMENT :
WELFARE FUND, :
                                      :
             Defendant.

---

     Plaintiffs Horizon Healthcare Services, Inc., Horizon Healthcare of New York, Inc., and Rayant Insurance Company Of New York f/k/a Horizon Healthcare Insurance Company of New York (collectively, "Horizon") allege the following as and for their Complaint against Defendant Local 272 Labor Management Welfare Fund ("Fund").

## NATURE OF THE ACTION

     1.      This is an action brought by Horizon against the Fund for failing to abide by its contractual obligations to pay certain rates for services rendered to the Fund's beneficiaries and their eligible dependents by certain hospitals in both the New York Presbyterian Hospital system (the "New York Presbyterian Hospitals") and the Continuum Health Partners system ("Continuum") (collectively, the New York Presbyterian Hospitals and Continuum will be referred to as the "Hospitals").

2.    For more than three years, the Fund's beneficiaries and their eligible dependents utilized Horizon's network of hospitals, including the New York Presbyterian Hospitals and Continuum, and the Fund paid the resulting claims without objection and at the agreed upon rates.  However, the Fund has recently changed course and refused to abide by the terms of its agreement with Horizon.  Specifically, the Fund has: (1) refused to pay the agreed rates for certain New York Presbyterian Hospitals claims and perhaps certain Continuum claims, asserting that an administrative error that caused Horizon to initially "misprice" certain claims absolves the Fund of its obligation to pay the claims at the contracted rate; and (2) flatly refused to either pay, or provide the required justification for its failure to pay, certain outstanding New York Presbyterian Hospital and Continuum Hospital claims.  Despite being notified of the outstanding issues and amounts due to the Hospitals, and being offered countless opportunities by the Hospitals and Horizon to resolve these issues amicably, the Fund continues to refuse to pay the amount required by its contract with Horizon.  The Fund has most recently refused to respond to a specific request from Continuum to review a spreadsheet of outstanding claims and advise Horizon of the status of its review.

3.    As a result of Defendant's breach of its contract with Horizon, the New York Presbyterian Hospitals commenced an arbitration proceeding against Horizon before the American Health Lawyers Association seeking payment for the claims.  The New York Presbyterian Hospitals allege that their contracts with Horizon require Horizon to ensure that the Fund's pay all claims for services rendered to Fund members at the appropriate contract rate.

2

4.    As a result of Defendant's breach of its contract with Horizon, Continuum has also made claims against Horizon and threatened litigation against Horizon for amounts owed by the Fund on outstanding claims. However, recognizing that the Fund retained exclusively responsibility for paying claims for its beneficiaries and their dependents, Continuum agreed to look first to the Fund for payment of these allegedly outstanding claims, and only seek payment from Horizon if these efforts were not fruitful. Despite reasonable efforts by Continuum to notify the Fund of these issues and resolve the outstanding claims, the Fund has not responded to Continuum. Continuum will now look to Horizon for payments of the claims.

5.    Horizon thus brings this action for damages and declaratory relief arising from Defendant's wrongful conduct and breach of its obligations to Horizon, and for such other and further equitable and legal relief as the Court deems just and proper.

## THE PARTIES

6.    Plaintiff Horizon Healthcare Services, Inc. ("HHS") is a non-profit health service corporation with its principal place of business in Newark, New Jersey.

7.    At all relevant times, Plaintiffs Horizon Healthcare of New York, Inc. and Rayant Insurance Company Of New York f/k/a Horizon Healthcare Insurance Company of New York were indirect, wholly-owned subsidiaries of HHS, and had their principal place of business at 1180 Avenue of the Americas, New York, New York.

8.    Defendant Local 272 Labor Management Welfare Fund is an employee welfare benefit plan within the meaning of the Employee Retirement Income Security Act of 1974 ("ERISA"), and has its principal place of business at 220 East 23rd St., New York, New York.

3

## JURISDICTION AND VENUE

9.    In accordance with Sections 301 and 302 of the New York Civil Practice Law and Rules, this Court has personal jurisdiction over Defendant because it has its principal places of business in New York County and because it transacted business within the State of New York.

10.    Venue is proper pursuant to Section 503 of the New York Civil Practice Law and Rules because Defendant has its principal places of business in New York County.

## ALLEGATIONS COMMON TO ALL COUNTS

### I.    Horizon's Participation In The New York Market For Healthcare Coverage

11.    Horizon is one of the largest health insurance and managed care organizations in the New York/New Jersey area. In recognition of Horizon's market strength and the anticipated growth of its business into the New York State market in the late 1990's, many New York hospitals, including the New York Presbyterian Hospitals and Continuum, entered into individual Network Hospital Agreements ("NHAs") with Horizon.

12.    The NHAs required the Hospitals to provide healthcare services to individuals eligible for coverage under Horizon health benefit plans at negotiated rates in exchange for being permitted to join Horizon's provider network and take advantage of the anticipated increased numbers of patients the hospitals would receive as a result. In addition, Horizon agreed to include the hospitals in its published list of "Network Hospitals" and promote the use of these "Network Hospitals" to individuals enrolled in its health benefit plans.

4

13.    As a result of its efforts, Horizon was able to establish a panel of hospitals, physicians, specialists, and other healthcare providers throughout New York and New Jersey for individuals enrolled in its health benefit plans.

14.    Prior to 2001, Horizon's efforts in the New York market were focused exclusively on developing and expanding its fully insured business. Under this delivery method, an employer enters into an insurance contract with, and pays a premium to, Horizon and in return Horizon assumes the financial risk of paying claims to the hospitals or other healthcare providers for enrollees in an insured plan.

## II.    Horizon Expands Its Efforts In The New York Market And Enters Into A Contract With The Fund

15.    In 2001, Horizon expanded its efforts in the New York market to include partially or fully administered self-insured healthcare business. Under this delivery method, an employer or health and welfare fund acts as its own insurer and uses Horizon to partially or wholly administer its group benefit plan by, among other things, providing certain administrative services to the group and allowing its employees or beneficiaries and their eligible dependents, access to Horizon's network of hospitals at rates negotiated between Horizon and the hospitals. Under this approach, the contract between the employer, group, or health/welfare fund and Horizon is not an indemnity insurance contract but a contract to pay for services rendered. In other words, the employer, group, or fund pays Horizon for its services but remains completely at risk for payment of actual claims incurred by those individuals covered under the health benefits plan. .

5

16.    In furtherance of its efforts to expand its business in the self insured market, Horizon began marketing to self-insured union welfare benefit funds throughout the New York metropolitan area. As a result, Horizon would provide eligible fund beneficiaries and their eligible dependents access to its Network Hospitals and perform certain administrative services, but would not assume the fund's financial responsibility for payment of claims.

17.    Horizon offered this business model to the Fund, and, in or around June 1, 2003, the Fund entered into an agreement with Horizon for administrative services (the "Agreement"). Under the terms of the Agreement, the Fund was responsible for, among other things, determining and verifying the eligibility of Fund beneficiaries and their eligible dependents, receiving, adjudicating and processing all claims for services provided by Horizon's Network Hospitals, paying claims for services rendered to its beneficiaries and their eligible dependents, and processing benefit appeals.

18.    When they entered into the Agreement, and at all times thereafter, both Horizon and the Fund understood that the Fund was not a fully-insured customer and thus assumed full responsibility for payment of claims for services rendered by health care service providers to its beneficiaries and their eligible dependents. The parties' agreement is set forth in a written agreement and further confirmed by the course of conduct between the parties over several years. Unlike a fully-insured customer, the Fund did not pay premiums to Horizon that would have justified Horizon agreeing to assume any liability for payment but rather paid a monthly administrative fee that was much less than a fully-insured premium. Moreover, throughout the term of the

6

Agreement, the Fund processed and paid claims submitted by the hospitals and never tendered these claims to Horizon for payment.

19.    The Fund further acknowledged its exclusive liability for the payment of claims by: (1) agreeing that in the event the Fund paid any hospital less than the amount to which it was entitled under the Agreement, the Fund would promptly adjust the underpayment and provide written notice to Horizon and the hospital of the adjustment; and (2) agreeing to indemnify and hold harmless Horizon against any claims related to the obligations that the Fund had assumed under the Agreement, including the obligation to pay claims submitted by Horizon's Network Hospitals.

### III.    The Performance Of The Contract Between Horizon And The Fund

20.    The Fund fully understood that it was obligated to pay for services performed for Fund beneficiaries and their eligible dependents. The health and welfare benefit plan identification cards issued to the Fund's beneficiaries directed that all claims were to be submitted by the hospitals directly to the Fund. The Fund would then determine whether the patient was eligible under the Fund's health and welfare benefit plan and whether the services rendered were covered under the plan. If the patient was eligible and the services were covered, the Fund would then price the claim based on Horizon's rates, remit payment for the claim directly to the hospital at the rates contracted for by Horizon, and the Fund would issue an Explanation of Benefits form directly to the Fund beneficiary.

7

21.    The rates at which claims were paid by the Fund under the Agreement were the rates that Horizon had negotiated with the Hospitals. These rates were typically based on a "percentage of charges" calculation, which meant that every claim received by the Fund was paid at a set, discounted percentage off of the hospital's published charges. The amount to be paid by the Fund was simply a matter of arithmetic — discounting the charges submitted by the hospital by a certain, fixed percentage.

22.    As of June 1, 2005, claims submitted to the Fund were paid at 85% of the hospitals' published charges. Late in 2006, the percentage rose to 90% of charges. The Fund was notified of this adjustment when it was made.

## IV.    The Fund Breaches The Agreement

### A.    New York Presbyterian Hospitals

23.    For several years, the process described above was followed by the hospitals, the Fund and Horizon for the overwhelming majority of claims submitted for services rendered to Fund beneficiaries and their eligible dependents.

24.    Nonetheless, on occasion, certain of the New York Presbyterian Hospitals would submit claims directly to Horizon instead of to the Fund. In such instances, Horizon could have returned the claim to the hospital with instructions to resubmit the claim to the Fund. However, in an effort to avoid unnecessary delays in the processing or payment of claims for Fund beneficiaries and their eligible dependents, Horizon "priced" these claims for the Fund through its own processing systems and, in turn, submitted the "priced" claims to the Fund for payment.

8

25.    Unfortunately, due to a systemic administrative error, a limited number of the claims that were submitted directly to Horizon were priced at an incorrect rate, far below the amount that the Fund was obligated to pay under the Agreement.

26.    The Fund knew, or should have known, when it received these claims from Horizon that they had been mispriced, as the amount calculated by Horizon was in many instances significantly lower than the 85% or 90% of the original charges that the Fund was obligated to pay, and had been paying, on claims submitted to it by the same hospitals. Nonetheless, the Fund paid these claims at the improper rate.

27.    In February 2007, the New York Presbyterian Hospitals filed an arbitration demand against Horizon with the American Health Lawyers Association seeking to, among other things, recoup the difference between the amounts paid by the Fund and the proper amounts due and owing by the Fund under the Agreement.

28.    The New York Presbyterian Hospitals have argued that their agreements with Horizon require Horizon to either guarantee payment of claims for self-insured beneficiaries and their eligible dependents or ensure that payment is made by employers and other self-insured health and welfare funds with whom Horizon does business. The New York Presbyterian Hospitals' allegations involved claims for Fund beneficiaries and their eligible dependents as well as of a number of other union welfare benefit plans.

9

29.     When the New York Presbyterian Hospitals filed the arbitration, Horizon notified each of the welfare benefit funds involved regarding the discrepancy in the pricing of the limited number of mispriced claims and demanded that each fund pay the appropriate amount to the hospitals under their agreements with Horizon. The majority of funds acknowledged their obligations, and Horizon is working with these funds to resolve the issues involving any additional monies owed on these outstanding claims.

30.     Notwithstanding the foregoing, the Fund has refused to acknowledge its obligations under the Agreement and claims that it is not liable for any amounts above which they have already paid, either for those claims that Horizon mistakenly told them to pay at a greater discount than what they were contractually obligated to pay or those claims for which underpayment was alleged by the New York Presbyterian Hospitals as a result of certain administrative issues.

31.     The Fund has also refused to engage in good faith discussions with Horizon and/or the Hospitals regarding certain claims that remain unpaid or underpaid as a result of administrative determinations, such as the failure to obtain pre-certification or pre-approval for certain services.

32.     Despite repeated offers to assist the Fund to properly reconcile these claims and resolve the dispute with the New York Presbyterian Hospitals, and repeated demands for payment, the Fund refuses to abide by the Agreement and pay these claims to the New York Presbyterian Hospitals at the contracted rate.

10

33.    As a result, Horizon has been forced to incur significant costs to defend itself against the New York Presbyterian Hospitals' allegations and will be forced to satisfy any judgment that may be entered against Horizon in the arbitration for monies owed by the Fund as a result of the conduct described above.

B.    Continuum

34.    In or around November 2006, Continuum notified Horizon of certain issues arising out its agreements with Horizon. Although it never ultimately filed suit, Continuum threatened litigation against Horizon seeking to recover, among other things, amounts due and owing for services rendered by Continuum to Fund beneficiaries and their eligible dependents as well as members and eligible beneficiaries of a number of other union welfare benefit plans.

35.    As was the case with the New York Presbyterian Hospitals, Continuum has argued that Horizon is required to either guarantee payment of claims for self-insured beneficiaries and their eligible dependents or ensure that payment is made by employers and other self-insured health and welfare funds with whom Horizon does business.

36.    During the course of this dispute, the nature of Horizon's relationship with the Fund became clear to Continuum, namely that the Fund was not a fully-insured customer and was thus responsible for payment of claims for services rendered by Continuum to its beneficiaries and their eligible dependents.

11

37.    Recognizing that the Fund retained exclusively responsibility for paying claims for its beneficiaries and their dependents, Continuum agreed to first seek payment directly from the Fund for any outstanding claims. Under this process, Continuum agreed to send to the Fund accounts receivable information setting forth all of the amounts due and demanding payment and/or justification for the Fund's failure to pay the outstanding claims. Only if the Fund failed to respond to this demand or provide reasonable defenses to the claims would Continuum seek payment from Horizon for these claims.

38.    Pursuant to his arrangement, Continuum has notified the Fund of its outstanding obligations but has received no response. In the absence of any response, Continuum will now seek payment for these claims from Horizon.

39.    Despite repeated offers to assist the Fund to properly reconcile these claims and resolve the dispute with Continuum, and repeated demands for payment, the Fund refuses to abide by the Agreement, respond to Continuum's claims request, and pay these claims to Continuum at the contracted rate.

40.    As a result, Horizon has been forced to incur significant costs to defend itself against Continuum's allegations and will be forced to satisfy any claims that may be made against Horizon for monies owed by the Fund as a result of the conduct described above.

12

## COUNT ONE
### (Breach of Contract)

41.    Horizon repeats and realleges the prior allegations of this Complaint as if set forth completely herein.

42.    The Fund was required under the Agreement to make payments to the Hospitals at the rates negotiated by Horizon with the Hospitals.

43.    The Fund has breached its obligations under the Agreement by paying less than they were required to pay for certain claims submitted by the Hospitals for services rendered by the Hospitals to the Fund's beneficiaries and their eligible dependents.

44.    Horizon has made demand upon the Fund for payment of these sums, but the Fund refuses to pay.

45.    Horizon has adequately and timely performed all of its obligations under the Agreement.

46.    As a direct and proximate result of the Fund's wrongful conduct, Horizon has suffered, and will continue to suffer, damages in an amount to be proved at trial

## COUNT TWO
### (Breach of Duty of Good Faith and Fair Dealing)

47.    Horizon repeats and realleges the prior allegations of this Complaint as if set forth completely herein.

48.    Implied in every contract performed in New York is a covenant of good faith and fair dealing which requires the parties to a contract to deal fairly and in good faith with one another.  The Agreement is a contract performed in New York and is therefore subject to this implied duty of good faith and fair dealing.

13

49.    By engaging in the acts and omissions described above, especially with respect to its failure to pay the contracted amounts for services rendered to its beneficiaries and their eligible dependents by the Hospitals, the Fund has breached, and continues to breach, the implied duty of good faith and fair dealing in the Agreement.

50.    As a direct and proximate result of the Fund's failure to deal in good faith, Horizon has suffered, and will continue to suffer, damages in an amount to be proved at trial.

### COUNT THREE
### (Unjust Enrichment)

51.    Horizon repeats and realleges the prior allegations of this Complaint as if set forth completely herein.

52.    The Fund intentionally paid less than it was required to pay for certain claims submitted by the Hospitals, as it knew or should have known that the amount at which it paid these claims was significantly lower than the rate at which it agreed to pay them.

53.    It would be unjust and inequitable to allow the Fund to retain the monies it wrongfully retained by failing to abide by its contractual obligations and to ensure that full payment was remitted to the Hospitals for services rendered to the Fund's beneficiaries and their eligible dependents.

54.    As a direct and proximate result of the Fund's wrongful acquisition and retention of these monies, Horizon has suffered, and will continue to suffer, damages in an amount to be proved at trial.

14

## COUNT FOUR
### (Prima Facie Tort)

55.     Horizon repeats and realleges the prior allegations of this Complaint as if set forth completely herein.

56.     The Fund intended to cause Horizon harm by failing to pay the appropriate rates for services rendered by the Hospitals to the Fund's beneficiaries and their eligible dependents, and succeeded in doing so.

57.     The Fund paid less than it was required to pay for certain claims submitted by the Hospitals, when it knew or should have known that the amount at which it paid these claims was significantly lower than the rate at which it agreed to pay them.

58.     The Fund intended that this conduct would cause harm to Horizon and/or knew with certainty that its conduct would cause harm to Horizon.

59.     The conduct described above was not justifiable under any circumstances.

60.     As a direct and proximate result of the Fund's conduct, Horizon has suffered, and will continue to suffer, damages in an amount to be proved at trial.

## COUNT FIVE
### (Declaratory Judgment)

61.     Horizon repeats and realleges the prior allegations of this Complaint as if set forth completely herein.

62.     This is a cause of action for declaratory relief pursuant to CPLR 3001 and 3007. Horizon seeks a judicial determination of the parties' rights under the Agreement. The issuance of the requested declaration will resolve the controversy between the parties over the correct interpretation and application of the Agreement

63.     The Fund has wrongfully failed and refused to remit payment to the Hospitals in the amounts previously agreed to by the parties, in violation of the Fund's obligations under the Agreement, and refused to defend and indemnify Horizon against the claims made against Horizon by the New York Presbyterian Hospitals in the Arbitration.

64.     An actual and justiciable controversy presently exists regarding the Fund's obligations under the Agreement, including without limitation its indemnity obligations.

65.     Horizon does not have an adequate remedy at law, and will continue to be harmed and damaged unless this Court enters appropriate temporary, preliminary and final injunctive relief.

**WHEREFORE**, Horizon demands judgment against the Fund as follows:

1.     That the Fund be ordered to pay the differential between what was paid to the Hospitals for services rendered by the Hospitals to Fund beneficiaries and their eligible dependents and what should have been paid under the Agreement.

2.     That the Fund be ordered to pay any damages that the New York Presbyterian Hospitals may be awarded in the arbitration in connection with the claim that Horizon is liable for the difference between what the Fund paid for services rendered to the Fund's beneficiaries and their eligible dependents by the Hospitals and the contracted rates between Horizon and the Hospitals.

3.     That the Fund be ordered to reimburse any damages or other amounts that Horizon pays the Hospitals for the difference between what the Fund paid for services rendered to the Fund's beneficiaries and their eligible dependents and the contracted rates between Horizon and the Hospitals.

16

4.    That the Fund be ordered to pay Horizon's reasonable attorneys' fees and the costs and disbursements in connection with its defense of the arbitration brought by the New York Presbyterian Hospitals in connection with the conduct described above.

5.    That compensatory, consequential and punitive damages be awarded in favor of Horizon and against the Fund, together with interest thereon.

6.    That Horizon be granted such other relief against the Fund as this Court deems just and proper.

Dated:  New York, New York
        April 22, 2008

                              GREENBERG TRAURIG, LLP
                              200 Park Avenue
                              New York, New York 10166
                              (212) 801-9200

                        By    _____
                              David Jay

17

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

HORIZON HEALTHCARE SERVICES, INC.,
HORIZON HEALTHCARE OF NEW YORK,
INC. and RAYANT INSURANCE COMPANY OF
NEW YORK f/k/a HORIZON HEALTHCARE
INSURANCE COMPANY OF NEW YORK,

         Plaintiffs,

        - against -

LOCAL 272 LABOR MANAGEMENT
WELFARE FUND,

        Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

Index No. 601213/08

**AFFIDAVIT OF SERVICE**

STATE OF NEW YORK    )
                     s.s.
COUNTY OF NEW YORK  )

MICHELLE WILLIAMS, being duly sworn, deposes and says:

That deponent is not a party to this action, is over eighteen years of age and resides in North Brunswick, New Jersey.

That on the **12th day of May, 2008** deponent served by first class mail the **NOTICE OF REMOVAL** thereof upon:

    **GREENBERG TRAURIG, LLP**
    *Attorneys for Plaintiffs*
    **200 Park Avenue**
    **New York, New York 10166**

                    Michelle Williams

Sworn to before me this
12th day of May 2008

Notary Public

Jane L. Barker
Notary Public, State of New York
No. 02BA6144861
Qualified in Westchester County
Commission Expires May 1, 20___

{00325097.DOC;}